**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 5 2026

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GABRIEL STIRITZ                                        PLAINTIFFS
and JOSH SANFORD
v.                          CASE NO. 4:26cv565-DPM

MARTELL GROWTH SOLUTIONS, INC.,
and DAN MARTELL                                       DEFENDANTS

## NOTICE OF REMOVAL

Defendant Martell Growth Solutions, Inc. ("Defendant"), for its Notice of Removal,
states:

1.      Plaintiffs Gabriel Stiritz and Josh Sanford commenced this action on March 10,
2026, by filing their Original Complaint in the Circuit Court of Pulaski County, Arkansas. The
action is captioned *Gabriel Stiritz and Josh Sanford v. Martell Growth Solutions Inc. and Dan
Martell*, No. 60CV-26-3226.

2.      Plaintiffs served Martell Growth Solutions, Inc., on May 8, 2026. Dan Martell has
not been served.

3.      This Notice is timely. It is filed within thirty days of service on Martell Growth
Solutions Inc. 28 U.S.C. § 1446(b). Removal under 9 U.S.C. § 205 is also available "at any time
before the trial."

4.      Removal is proper on two independent grounds, set out below. The first is the
Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"),
implemented in the United States at 9 U.S.C. §§ 201-208. The second is diversity of citizenship.
28 U.S.C. § 1332(a)(2).

5.      Defendant Martell Growth Solutions, Inc., has not responded to the Complaint. It

This case assigned to District Judge *Marshall*
and to Magistrate Judge *Moore*

reserves its objection to personal jurisdiction, which it will raise by motion under Fed. R. Civ. P. 12(b)(2), and reserves all other defenses. The defenses of insufficient process and insufficient service of process are reserved as to Dan Martell, who has not been served; Martell Growth Solutions, Inc., was served on May 8, 2026.

## The Parties

6. Plaintiffs Gabriel Stiritz and Josh Sanford are alleged to be citizens of Arkansas. Compl. ¶¶ 6-7.

7. Defendant Martell Growth Solutions, Inc., is a corporation organized under the laws of British Columbia, Canada, with its principal place of business in Kelowna, British Columbia. It is a citizen or subject of a foreign state. Compl. ¶ 8; 28 U.S.C. § 1332(c)(1).

8. Dan Martell has not been served. The Complaint pleads no count against him and seeks no relief against him. His consent to removal is not required. 28 U.S.C. § 1446(b)(2)(A).

## Ground I: Removal Under the Convention (9 U.S.C. § 205)

9. This action is removable under 9 U.S.C. § 205 because its subject matter relates to an arbitration agreement falling under the Convention.

10. The Convention is a multilateral treaty to which both the United States and Canada are parties. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. It requires the courts of each contracting state to recognize and enforce written arbitration agreements that fall within its scope. Congress made the Convention enforceable in the courts of the United States through Chapter 2 of the Federal Arbitration Act, which provides that the Convention "shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201.

11. Plaintiffs' claims arise from their alleged enrollment in Defendant's "Elite Business

Coaching" program. Compl. ¶¶ 1, 12-27. During the period of that alleged enrollment, the program was offered under published written Terms and Conditions that included an arbitration agreement seated in New Brunswick, Canada. Copies of the operative-period Terms and Conditions reflecting that arbitration agreement are attached as **Exhibit A**.

12.     The Terms and Conditions fall under the Convention because they provide for arbitration in a foreign State and arise out of a commercial relationship that is not entirely between citizens of the United States. 9 U.S.C. § 202.

13.     An action falling under the Convention arises under the laws and treaties of the United States, and this Court has original jurisdiction over it regardless of the amount in controversy. 9 U.S.C. § 203.

14.     Removal under § 205 is proper at any time before trial, and the ground for removal need not appear on the face of the Complaint. 9 U.S.C. § 205. Plaintiffs' claims relate to the Convention arbitration agreement because that agreement could conceivably affect the outcome of this action. *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843-44 (8th Cir. 2012).

15.     By removing under § 205, Defendant Martell Growth Solutions, Inc., asserts its right to seek resolution of this dispute in the forum the arbitration agreement provides, and expressly reserves its right to move to compel arbitration and to stay or dismiss this action under the Convention and Federal Arbitration Act Chapter 2 (9 U.S.C. §§ 201-208, including § 206) at the appropriate time.

16.     Defendant does not, by this Notice, submit the question of arbitrability for decision, concede that any Convention arbitration agreement was formed or that Defendant is entitled to enforce it, waive any objection to personal jurisdiction, or waive any other defense, all of which are expressly reserved.

3

### Ground II: Diversity of Citizenship (28 U.S.C. § 1332(a)(2))

17.     The parties are also diverse. Plaintiffs are Arkansas citizens; Defendant Martell Growth Solutions, Inc., is a citizen or subject of Canada. No defendant is an Arkansas citizen. 28 U.S.C. §§ 1332(a)(2), 1441(b).

18.     The amount in controversy exceeds $75,000, exclusive of interest and costs, as to each Plaintiff. Plaintiffs together paid approximately $6,000 (Compl. ¶ 27), but they also seek punitive damages and statutory attorney's fees.

19.     Plaintiffs seek punitive damages on their fraudulent-inducement claim. Compl. ¶ 35; Ark. Code Ann. § 16-55-206. Punitive damages count toward the amount in controversy. *Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992).

20.     Plaintiffs seek attorney's fees under the Arkansas Deceptive Trade Practices Act. Compl. ¶ 40; Ark. Code Ann. § 4-88-113(f). Statutory attorney's fees count toward the amount in controversy. *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933).

21.     A notice of removal need only plausibly allege that the amount in controversy exceeds the threshold. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The question is not whether the damages are that large, but whether a fact finder might legally conclude that they are. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

22.     Each Plaintiff's potential punitive damages and attorneys' fee claims, added to his actual claimed damages, plausibly exceeds $75,000. Defendant denies liability and denies that Plaintiffs are entitled to any recovery. This allegation states the amount in controversy; it is not an admission of liability or of damages.

### Procedural Requirements

23.     This Court embraces Pulaski County, where the action is pending. 28 U.S.C. §§

4

1441(a), 1446(a).

24.    Copies of all process, pleadings, and orders served on Defendant are attached as **Exhibit B**. 28 U.S.C. § 1446(a).

25.    Defendant will promptly file a copy of this Notice with the Circuit Court of Pulaski County and give written notice to Plaintiffs. 28 U.S.C. § 1446(d).

26.    All requirements for removal are met.

WHEREFORE, defendant Martell Growth Solutions, Inc., gives notice of the removal of this action to this Court and respectfully prays for all just and proper relief.

Respectfully submitted:

J. Andrew Vines (AR Bar No. 98140)
DOBSON & VINES, PLLC
P.O. Box 251763
Little Rock, Arkansas 72225

Phone:        (501) 490-9906
Fax:          (501) 712-4538
Email:        avines@dobsonvines.com

*Attorneys for Defendant Martell Growth Solutions, Inc.*

**Wayback Machine Capture** — danmartell.com/terms-privacy/
Timestamp: 2025-12-11 :: UTC
Source URL: https://web.archive.org/web/20251211/https://www.danmartell.com/terms-privacy/
Extracted by DVLF — Sanford v. Martell (60CV-26-3226) — 2026-05-15

# PRIVACY POLICY

*Effective Date: May 21, 2025*

**The following Privacy Policy governs the online information collection practices of MARTELL MEDIA INC. D/B/A WWW.DANMARTELL.COM ("we" or "us"). Specifically, it outlines the types of information that we gather about you while you are using the www.danmartell.com website (the "Site"), and the ways in which we use this information. This Privacy Policy, including our children's privacy statement, does not apply to any information you may provide to us or that we may collect offline and/or through other means (for example, at a live event, via telephone, or through the mail).**

**Please read this Privacy Policy carefully. By visiting and using the Site, you agree that your use of our Site, and any dispute over privacy, is governed by this Privacy Policy. Because the Web is an evolving medium, we may need to change our Privacy Policy at some point in the future, in which case we'll post the changes to this Privacy Policy on this website and update the Effective Date of the policy to reflect the date of the changes. By continuing to use the Site after we post any such changes, you accept the Privacy Policy as modified.**

## How We Collect and Use Information

————————————————————

We may collect and store personal or other information that you voluntarily supply to us online while using the Site (e.g., while on the Site or in responding via email to a feature provided on the Site). The Site only contacts individuals who specifically request that we do so or in the event that they have signed up to receive our messaging, attended one of our events, or have purchased one of our products. The Site collects personally identifying information from our users during online registration and online purchasing. Generally, this information includes name and e-mail address for registration or opt-in purposes and name, postal address, and credit card information when registering for our events or purchasing our products. All of this information is provided to us by you.

**EXHIBIT A**

We also collect and store information that is generated automatically as you navigate online through the Site. For example, we may collect information about your computer's connection to the Internet, which allows us, among other things, to improve the delivery of our web pages to you and to measure traffic on the Site. We also may use a standard feature found in browser software called a "cookie" to enhance your experience with the Site. Cookies are small files that your web browser places on your hard drive for record-keeping purposes. By showing how and when visitors use the Site, cookies help us deliver advertisements, identify how many unique users visit us, and track user trends and patterns. They also prevent you from having to re-enter your preferences on certain areas of the Site where you may have entered preference information before. The Site also may use web beacons (single-pixel graphic files also known as "transparent GIFs") to access cookies and to count users who visit the Site or open HTML-formatted email messages.

We use the information we collect from you while you are using the Site in a variety of ways, including using the information to customize features; advertising that appear on the Site; and, making other offers available to you via email, direct mail or otherwise. We also may provide your information to third parties, such as service providers, contractors and third-party publishers and advertisers for a variety of purposes. Unless you inform us in accordance with the process described below, we reserve the right to use, and to disclose to third parties, all of the information collected from and about you while you are using the Site in any way and for any purpose, such as to enable us or a third party to provide you with information about products and services. If you do not wish your information to be used for these purposes, you must send a letter to the Online Privacy Coordinator whose address is listed at the end of this Privacy Policy requesting to be taken off any lists of information that may be used for these purposes or that may be given or sold to third-parties.

Please keep in mind that whenever you voluntarily make your personal information available for viewing by third parties online – for example on message boards, weblogs, through email, or in chat areas – that information can be seen, collected and used by others besides us. We cannot be responsible for any unauthorized third-party use of such information.

Some of our third-party advertisers and ad servers that place and present advertising on the Site also may collect information from you via cookies, web beacons or similar technologies. These third-party advertisers and ad servers may use the information they collect to help present their advertisements, to help measure and research the advertisements' effectiveness, or for other purposes. The use and collection of your information by these third-party advertisers and ad servers is governed by the relevant third-party's privacy policy and is not covered by our Privacy Policy. Indeed, the privacy policies of these third-party advertisers and ad servers may be different from ours. If you have any concerns about a third party's use of cookies or web beacons or use of your information, you should visit that party's website and review its privacy policy.

The Site also includes links to other websites and provides access to products and services offered by third parties, whose privacy policies we do not control. When you access another website or purchase third-party products or services through the Site, use of any information you provide is governed by the privacy policy of the operator of the site you are visiting or the provider of such products or services.

We may also make some content, products, and services available through our Site or by emailing messages to you through cooperative relationships with third-party providers, where the brands of our provider partner appear on the Site in connection with such content, products and/or services. We may

share with our provider partner any information you provide, or that is collected, in the course of visiting any pages that are made available in cooperation with our provider partner. In some cases, the provider partner may collect information from you directly, in which cases the privacy policy of our provider partner may apply to the provider partner's use of your information. The privacy policy of our provider partners may differ from ours. If you have any questions regarding the privacy policy of one of our provider partners, you should contact the provider partner directly for more information.

Be aware that we may occasionally release information about our visitors when release is appropriate to comply with the law or to protect the rights, property or safety of users of the Site or the public.

Please also note that as our business grows, we may buy or sell various assets. In the unlikely event that we sell some or all of our assets, or one or more of our websites is acquired by another company, information about our users may be among the transferred assets.

## Google Analytics

————————————————————————

We also use Google Analytics Advertiser Features to optimize our business. Advertiser features include:

- Remarketing with Google Analytics
- Google Display Network Impression Reporting
- DoubleClick Platform integrations
- Google Analytics Demographics and Interest Reporting

By enabling these Google Analytics Display features, we are required to notify our visitors by disclosing the use of these features and that we and third-party vendors use first-party cookies (such as the Google Analytics cookie) or other first-party identifiers, and third-party cookies (such as the DoubleClick cookie) or other third-party identifiers together to gather data about your activities on our Site. Among other uses, this allows us to contact you if you begin to fill out our check-out form but abandon it before completion with an email reminding you to complete your order. The "Remarketing" feature allows us to reach people who previously visited our Site, and match the right audience with the right advertising message.

You can opt-out of Google's use of cookies by visiting Google's ad settings and/or you may opt-out of a third-party vendor's use of cookies by visiting the Network Advertising Initiative opt-out page.

## Facebook

————————————————————————

As advertisers on Facebook and through our Facebook page, we, (not Facebook) may collect content or information from a Facebook user and such information may be used in the same manner specified in this Privacy Policy. You consent to our collection of such information.

We abide by Facebook's Data Use Restrictions.

- Any ad data collected, received or derived from our Facebook ad ("Facebook advertising data") is only shared with someone acting on our behalf, such as our service provider. We are responsible for ensuring that our service providers protect any Facebook advertising data or any other information obtained from us, limit our use of all of that information, and keep it confidential and secure.
- We do not use Facebook advertising data for any purpose (including retargeting, commingling data across multiple advertisers' campaigns, or allowing piggybacking or redirecting with tags), except

on an aggregate and anonymous basis (unless authorized by Facebook) and only to assess the performance and effectiveness of our Facebook advertising campaigns.
- We do not use Facebook advertising data, including the targeting criteria for a Facebook ad, to build, append to, edit, influence, or augment user profiles, including profiles associated with any mobile device identifier or other unique identifier that identifies any particular user, browser, computer or device.
- We do not transfer any Facebook advertising data (including anonymous, aggregate, or derived data) to any ad network, ad exchange, data broker or other advertising or monetization related service.

## General Data Privacy Regulation (GDPR)

————————————————————————

The GDPR took effect on May 25, 2018, and is intended to protect the data of the European Union (EU) citizens.

As a company that markets its site, content, products and/or services online we do not specifically target our marketing to the EU or conduct business in or to the EU in any meaningful way. If the data that you provide to us in the course of your use of our site, content, products and/or services is governed by GDPR, we will abide by the relevant portions of the Regulation.

If you are a resident of the European Economic Area (EEA) or are accessing this site from within the EEA, you may have the right to request: access to, correction of, deletion of; portability of; and restriction or objection to processing, of your personal data, from us. This includes the "right to be forgotten."

To make any of these requests, please contact our GDPR contact at lauren@danmartell.com or contact us at (844) 994-1152.

## California Privacy Rights Act (CPRA)

————————————————————————

The CPRA (which amended and superseded the CCPA) took effect on January 1, 2023, and is intended to protect the personal information of California residents.

The CPRA has certain threshold requirements which a company must meet in order to be required to comply with its provisions. Upon information and belief, our company does not meet those thresholds. In the event of a change in our status, and if the data that you provide in the course of your use of our site, content, products and/or services is governed by CPRA, we will abide by the relevant portions of the Act.

If you are a resident of the state of California, you may have the right to request disclosure of the personal information we have collected about you and the types of third parties with whom it has been shared; request a portable copy of your information; opt-out from marketing messages or the sale of your information to third parties; and request deletion of your personal information.

To make these requests, please contact our CPRA contact at Danielle@danmartell.com

## Children's Privacy Statement

————————————————————————

This children's privacy statement explains our practices with respect to the online collection and use of personal information from children under the age of thirteen and provides important information regarding their rights under federal law with respect to such information.

This Site is not directed to children under the age of thirteen and we do NOT knowingly collect personally identifiable information from children under the age of thirteen as part of the Site. We screen users who wish to provide personal information in order to prevent users under the age of thirteen from providing such information. If we become aware that we have inadvertently received personally identifiable information from a user under the age of thirteen as part of the Site, we will delete such information from our records. If we change our practices in the future, we will obtain prior, verifiable parental consent before collecting any personally identifiable information from children under the age of thirteen as part of the Site.

Because we do not collect any personally identifiable information from children under the age of thirteen as part of the Site, we also do NOT knowingly distribute such information to third parties.

We do NOT knowingly allow children under the age of thirteen to publicly post or otherwise distribute personally identifiable contact information through the Site.

Because we do not collect any personally identifiable information from children under the age of thirteen as part of the Site, we do NOT condition the participation of a child under thirteen in the Site's online activities on providing personally identifiable information.

# Canada's Anti-Spam Legislation (CASL)

————————————————————————

CASL came into force in three phases, the last of which became effective on July 1, 2017. CASL establishes rules for the sending of commercial electronic messages. We operate our business in compliance with CASL. Therefore, we will only send newsletters and other email communications to users who have opted-in to receive our messaging. If you are currently receiving emails from us, it is because you have given us your express consent (either orally, in writing, or by opting in on our site) or implied consent (such as by purchasing or inquiring about our products or services). Your express consent is valid until revoked, whereas your implied consent may expire after a certain period of time, in accordance with the law.

All of our emails will contain an unsubscribe link. In all of our emails to you, we include our business name, postal address and a telephone number and/or email address, and it will be easy for you to identify us as the sender. To ensure that we are compliant with CASL, we keep a record of your consent, namely, when, where and how you provided (or revoked) your consent. We respect your unsubscribes, the expiration of your consent, and any actions taken on your part to revoke consent to receive messaging from us.

# How We Store Your Information

————————————————————————

Your information is stored at the list server that delivers the Site content and messaging. Your information can only be accessed by those who help manage those lists in order to deliver an e-mail to those who would like to receive the Site material.

All of the messaging or emails that are sent to you by the Site include an unsubscribe link in them. You can remove yourself at any time from our mailing list by clicking on the unsubscribe link that can be found in every communication that we send you.

# Disclaimer

_____

This policy may be changed at any time at our discretion. If we should update this policy, we will post the updates to this page on our Website.

If you have any questions or concerns regarding our privacy policy please direct them to care@danmartell.com

# TERMS OF SERVICE

Date Effective: May 21, 2025

(The following TERMS OF SERVICE are subject to change at any time and at the sole discretion of the Site owner and operator. Please visit the site regularly for updates.)

# General

_____

This website (the "Site") is owned and operated by MARTELL MEDIA INC. D/B/A DANMARTELL.COM ("DANMARTELL.COM," "we" or "us"). By using the Site, you agree to be bound by these Terms of Service and to use the Site in accordance with these Terms of Service, our Privacy Policy, our Refund Policy and any additional terms and conditions that may apply to specific sections of the Site or to products and services available through the Site or from DANMARTELL.COM. Accessing the Site, in any manner, whether automated or otherwise, constitutes use of the Site and your agreement to be bound by these Terms of Service.

We reserve the right to change these Terms of Service or to impose new conditions on use of the Site, from time to time, in which case we will post the revised Terms of Service on this website. By continuing to use the Site after we post any such changes, you accept the Terms of Service, as modified.

# Intellectual Property Rights

_____

Our Limited License to You. This Site and all the materials available on the Site are the property of us and/or our affiliates or licensors, and are protected by copyright, trademark, and other intellectual property laws. The Site is provided solely for your personal noncommercial use. You may not use the Site or the

materials available on the Site in a manner that constitutes an infringement of our rights or that has not been authorized by us. More specifically, unless explicitly authorized in these Terms of Service or by the owner of the materials. you may not modify, copy, reproduce. republish, upload, post. transmit, translate, sell, create derivative works, exploit, or distribute in any manner or medium (including by email or other electronic means) any material from the Site. You may, however, from time to time, download and/or print one copy of individual pages of the Site for your personal, non-commercial use, provided that you keep intact all copyright and other proprietary notices.

Your License to Us. By posting or submitting any material (including, without limitation, comments, blog entries, Facebook postings, photos and videos) to us via the Site, internet groups, social media venues, or to any of our staff via email, text or otherwise, you are representing: (i) that you are the owner of the material, or are making your posting or submission with the express consent of the owner of the material; and (ii) that you are thirteen years of age or older. In addition, when you submit, email, text or deliver or post any material, you are granting us, and anyone authorized by us, a royalty-free, perpetual, irrevocable, non-exclusive, unrestricted, worldwide license to use, copy, modify, transmit, sell, exploit, create derivative works from, distribute, and/or publicly perform or display such material, in whole or in part, in any manner or medium, now known or hereafter developed, for any purpose. The foregoing grant shall include the right to exploit any proprietary rights in such posting or submission, including, but not limited to, rights under copyright, trademark, service mark or patent laws under any relevant jurisdiction. Also, in connection with the exercise of such rights, you grant us, and anyone authorized by us, the right to identify you as the author of any of your postings or submissions by name. email address or screen name, as we deem appropriate.

You acknowledge and agree that any contributions originally created by you for us shall be deemed a "work made for hire" when the work performed is within the scope of the definition of a work made for hire in Section 101 of the United States Copyright Law, as amended. As such, the copyrights in those works shall belong to DANMARTELL.COM from their creation. Thus, DANMARTELL.COM shall be deemed the author and exclusive owner thereof and shall have the right to exploit any or all of the results and proceeds in any and all media, now known or hereafter devised, throughout the universe, in perpetuity, in all languages, as DANMARTELL.COM determines. In the event that any of the results and proceeds of your submissions hereunder are not deemed a "work made for hire" under Section 101 of the Copyright Act, as amended, you hereby, without additional compensation, irrevocably assign, convey and transfer to DANMARTELL.COM all proprietary rights, including without limitation, all copyrights and trademarks throughout the universe, in perpetuity in every medium, whether now known or hereafter devised, to such material and any and all right, title and interest in and to all such proprietary rights in every medium, whether now known or hereafter devised, throughout the universe, in perpetuity. Any posted material which are reproductions of prior works by you shall be co-owned by us.

You acknowledge that DANMARTELL.COM has the right but not the obligation to use and display any postings or contributions of any kind and that DANMARTELL.COM may elect to cease the use and display of any such materials (or any portion thereof), at any time for any reason whatsoever.

Limitations on Linking and Framing. You may establish a hypertext link to the Site so long as the link does not state or imply any sponsorship of your site by us or by the Site. However, you may not, without our prior written permission, frame or inline link any of the content of the Site, or incorporate into another website or other service any of our material, content or intellectual property.

# Disciaimers

——————————————————————

Throughout the Site, we may provide links and pointers to Internet sites maintained by third parties. Our linking to such third-party sites does not imply an endorsement or sponsorship of such sites, or the information, products or services offered on or through the sites. In addition, neither we nor affiliates operate or control in any respect any information, products or services that third parties may provide on or through the Site or on websites linked to by us on the Site.

If applicable, any opinions. advice, statements, services, offers, or other information or content expressed or made available by third parties, including information providers, are those of the respective authors or distributors, and not DANMARTELL.COM. Neither DANMARTELL.COM nor any third-party provider of information guarantees the accuracy, completeness, or usefulness of any content. Furthermore, DANMARTELL.COM neither endorses nor is responsible for the accuracy and reliability of any opinion, advice, or statement made on any of the Sites by anyone other than an authorized DANMARTELL.COM representative while acting in his/her official capacity.

THE INFORMATION, PRODUCTS AND SERVICES OFFERED ON OR THROUGH THE SITE AND BY DANMARTELL.COM AND ANY THIRD-PARTY SITES ARE PROVIDED "AS IS" AND WITHOUT WARRANTIES OF ANY KIND EITHER EXPRESS OR IMPLIED. TO THE FULLEST EXTENT PERMISSIBLE PURSUANT TO APPLICABLE LAW, WE DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. WE DO NOT WARRANT THAT THE SITE OR ANY OF ITS FUNCTIONS WILL BE UNINTERRUPTED OR ERROR-FREE, THAT DEFECTS WILL BE CORRECTED, OR THAT ANY PART OF THIS SITE, INCLUDING BULLETIN BOARDS, OR THE SERVERS THAT MAKE IT AVAILABLE, ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

WE DO NOT WARRANT OR MAKE ANY REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE USE OF THE SITE OR MATERIALS ON THIS SITE OR ON THIRD-PARTY SITES IN TERMS OF THEIR CORRECTNESS, ACCURACY, TIMELINESS, RELIABILITY OR OTHERWISE.

You agree at all times to defend, indemnify and hold harmless DANMARTELL.COM, its affiliates, their successors, transferees, assignees and licensees and their respective parent and subsidiary companies, agents, associates, officers, directors, shareholders and employees of each from and against any and all claims, causes of action, damages, liabilities. costs and expenses, including legal fees and expenses, arising out of or related to your breach of any obligation, warranty, representation or covenant set forth herein.

# Online Commerce

——————————————————————

Certain sections of the Site may allow you to purchase many different types of products and services online that are provided by third parties. We are not responsible for the quality, accuracy, timeliness, reliability or any other aspect of these products and services. If you make a purchase from a merchant on the Site or on a

site linked to by the Site, the information obtained during your visit to that merchant's online store or site, and the information that you give as part of the transaction, such as your credit card number and contact information, may be collected by both the merchant and us. A merchant may have privacy and data collection practices that are different from ours. We have no responsibility or liability for these independent policies. In addition, when you purchase products or services on or through the Site, you may be subject to additional terms and conditions that specifically apply to your purchase or use of such products or services. For more information regarding a merchant, its online store, its privacy policies, and/or any additional terms and conditions that may apply, visit that merchant's website and click on its information links or contact the merchant directly. You release us and our affiliates from any damages that you incur, and agree not to assert any claims against us or them, arising from your purchase or use of any products or services made available by third parties through the Site.

Your participation, correspondence or business dealings with any third party found on or through our Site, regarding payment and delivery of specific goods and services, and any other terms, conditions, representations or warranties associated with such dealings, are solely between you and such third party. You agree that DANMARTELL.COM shall not be responsible or liable for any loss, damage, or other matters of any sort incurred as the result of such dealings.

You agree to be financially responsible for all purchases made by you or someone acting on your behalf through the Site. You agree to use the Site and to purchase services or products through the Site for legitimate, non-commercial purposes only. You also agree not to make any purchases for speculative, false or fraudulent purposes or for the purpose of anticipating demand for a particular product or service. You agree to only purchase goods or services for yourself or for another person for whom you are legally permitted to do so. When making a purchase for a third party that requires you to submit the third party's personal information to us or a merchant, you represent that you have obtained the express consent of such third party to provide such third party's personal information.

# Interactive Features

---

This Site may include a variety of features, such as bulletin boards, web logs, chat rooms, and email services, which allow feedback to us and real-time interaction between users, and other features which allow users to communicate with others. Responsibility for what is posted on bulletin boards, web logs, chat rooms, and other public posting areas on the Site, or sent via any email services on the Site, lies with each user – you alone are responsible for the material you post or send. We do not control the messages, information or files that you or others may provide through the Site. It is a condition of your use of the Site that you do not:

- Restrict or inhibit any other user from using and enjoying the Site.
- Use the Site to impersonate any person or entity, or falsely state or otherwise misrepresent your affiliation with a person or entity.
- Interfere with or disrupt any servers or networks used to provide the Site or its features, or disobey any requirements, procedures, policies or regulations of the networks we use to provide the Site.
- Use the Site to instigate or encourage others to commit illegal activities or cause injury or property damage to any person.
- Gain unauthorized access to the Site, or any account, computer system, or network connected to this Site, by means such as hacking, password mining or other illicit means.

- Obtain or attempt to obtain any materials or information through any means not intentionally made available through this Site.
- Use the Site to post or transmit any unlawful, threatening, abusive, libelous, defamatory, obscene, vulgar, pornographic, profane or indecent information of any kind, including without limitation any transmissions constituting or encouraging conduct that would constitute a criminal offense, give rise to civil liability or otherwise violate any local, state, national or international law.
- Use the Site to post or transmit any information, software or other material that violates or infringes upon the rights of others, including material that is an invasion of privacy or publicity rights or that is protected by copyright, trademark or other proprietary right, or derivative works with respect thereto, without first obtaining permission from the owner or rights holder.
- Use the Site to post or transmit any information, software or other material that contains a virus or other harmful component.
- Use the Site to post, transmit or in any way exploit any information, software or other material for commercial purposes, or that contains advertising.
- Use the Site to advertise or solicit to anyone to buy or sell products or services, or to make donations of any kind, without our express written approval.
- Gather for marketing purposes any email addresses or other personal information that has been posted by other users of the Site.

DANMARTELL.COM may host message boards, chats and other private/public forums on its Sites and on other platforms. Any user failing to comply with the terms and conditions of this Agreement may be expelled from and refused continued access to, the message boards, groups, chats or other such forums in the future. DANMARTELL.COM or its designated agents may remove or alter any user-created content at any time for any reason. Message boards, chats and other public forums are intended to serve as discussion centers for users and subscribers. Information and content posted within these public forums may be provided by DANMARTELL.COM staff, DANMARTELL.COM's outside contributors, or by users not connected with DANMARTELL.COM, some of whom may employ anonymous user names. DANMARTELL.COM expressly disclaims all responsibility and endorsement and makes no representation as to the validity of any opinion, advice, information or statement made or displayed in these forums by third parties, nor are we responsible for any errors or omissions in such postings, or for hyperlinks embedded in any messages. Under no circumstances will we, our affiliates, suppliers or agents be liable for any loss or damage caused by your reliance on information obtained through these forums. The opinions expressed in these forums are solely the opinions of the participants, and do not reflect the opinions of DANMARTELL.COM or any of its subsidiaries or affiliates.

DANMARTELL.COM has no obligation whatsoever to monitor any of the content or postings on the message boards, chat rooms or other public forums on the Sites. However, you acknowledge and agree that we have the absolute right to monitor the same at our sole discretion. In addition, we reserve the right to alter, edit, refuse to post or remove any postings or content, in whole or in part, for any reason and to disclose such materials and the circumstances surrounding their transmission to any third party in order to satisfy any applicable law, regulation, legal process or governmental request and to protect ourselves, our clients, sponsors, users and visitors.

# Registration

————————————————————

To access certain features of the Site, we may ask you to provide certain demographic information including your gender, year of birth, zip code and country. In addition, if you elect to sign-up for a particular feature of the Site, such as chat rooms, web logs, or bulletin boards, you may also be asked to register with us on the form provided and such registration may require you to provide personally

identifiable information such as your name and email address. You agree to provide true, accurate, current and complete information about yourself as prompted by the Site's registration form. If we have reasonable grounds to suspect that such information is untrue, inaccurate, or incomplete, we have the right to suspend or terminate your account and refuse any and all current or future use of the Site (or any portion thereof). Our use of any personally identifiable information you provide to us as part of the registration process is governed by the terms of our Privacy Policy.

# Passwords

————————————————————

To use certain features of the Site, you will need a username and password, which you will receive through the Site's registration process. You are responsible for maintaining the confidentiality of the password and account, and are responsible for all activities (whether by you or by others) that occur under your password or account. You agree to notify us immediately of any unauthorized use of your password or account or any other breach of security, and to ensure that you exit from your account at the end of each session. We cannot and will not be liable for any loss or damage arising from your failure to protect your password or account information.

# Limitation of Liability

————————————————————

UNDER NO CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, SHALL WE, OUR SUBSIDIARY AND PARENT COMPANIES OR AFFILIATES BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES THAT RESULT FROM THE USE OF, OR THE INABILITY TO USE, THE SITE, INCLUDING OUR MESSAGING, BLOGS, COMMENTS OF OTHERS, BOOKS, EMAILS, PRODUCTS, OR SERVICES, OR THIRD-PARTY MATERIALS, PRODUCTS, OR SERVICES MADE AVAILABLE THROUGH THE SITE OR BY US IN ANY WAY, EVEN IF WE ARE ADVISED BEFOREHAND OF THE POSSIBILITY OF SUCH DAMAGES. (BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF CERTAIN CATEGORIES OF DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU. IN SUCH STATES, OUR LIABILITY AND THE LIABILITY OF OUR SUBSIDIARY AND PARENT COMPANIES OR AFFILIATES IS LIMITED TO THE FULLEST EXTENT PERMITTED BY SUCH STATE LAW.) YOU SPECIFICALLY ACKNOWLEDGE AND AGREE THAT WE ARE NOT LIABLE FOR ANY DEFAMATORY, OFFENSIVE OR ILLEGAL CONDUCT OF ANY USER. IF YOU ARE DISSATISFIED WITH THE SITE, ANY MATERIALS, PRODUCTS, OR SERVICES ON THE SITE, OR WITH ANY OF THE SITE'S TERMS AND CONDITIONS, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE SITE AND THE PRODUCTS, SERVICES AND/OR MATERIALS.

THIS SITE IS CONTINUALLY UNDER DEVELOPMENT AND DANMARTELL.COM MAKES NO WARRANTY OF ANY KIND, IMPLIED OR EXPRESS, AS TO ITS ACCURACY, COMPLETENESS OR APPROPRIATENESS FOR ANY PURPOSE.

WITH REGARDS TO FINANCIAL CONTENT ON THE SITE:

NEITHER DANMARTELL.COM NOR ITS OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, SUBSIDIARIES, AFFILIATES, LICENSORS, SERVICE PROVIDERS, CONTENT PROVIDERS AND AGENTS ARE FINANCIAL ADVISERS AND NOTHING CONTAINED ON THE SITE IS INTENDED TO BE OR TO BE CONSTRUED AS FINANCIAL ADVICE.

DANMARTELL.COM IS NOT AN INVESTMENT ADVISORY SERVICE, IS NOT AN INVESTMENT ADVISER, AND DOES NOT PROVIDE PERSONALIZED FINANCIAL ADVICE OR ACT AS A FINANCIAL ADVISOR. THE SITE EXISTS FOR EDUCATIONAL PURPOSES ONLY, AND THE MATERIALS AND INFORMATION CONTAINED HEREIN ARE FOR GENERAL INFORMATIONAL PURPOSES ONLY.

THE EDUCATION AND INFORMATION PRESENTED HEREIN IS INTENDED FOR A GENERAL AUDIENCE AND DOES NOT PURPORT TO BE, NOR SHOULD IT BE CONSTRUED AS, SPECIFIC ADVICE TAILORED TO ANY INDIVIDUAL. YOU ARE ENCOURAGED TO DISCUSS ANY OPPORTUNITIES WITH YOUR ATTORNEY, ACCOUNTANT, FINANCIAL PROFESSIONAL OR OTHER ADVISOR.

++++++++++++++++++

The information contained in this program (including but not limited to content in any format) is based on sources and information reasonably believed to be accurate as of the time it was recorded or created. However, this material deals with topics that are constantly changing and are subject to ongoing changes related to technology and the market place as well as legal and related compliance issues. Therefore, the completeness and current accuracy of the materials cannot be guaranteed. These materials do not constitute legal, compliance, financial, tax, accounting, or related advice.

The end user of this information should therefore use the contents of this program and the materials as a general guideline and not as the ultimate source of current information and when appropriate the user should consult their own legal, accounting or other advisors.

Any case studies, testimonials, examples, illustrations cannot guarantee that the user will achieve similar results. In fact, your results may vary significantly and factors such as your market, personal effort and many other circumstances may and will cause results to vary.

THE INFORMATION PROVIDED IN THIS PRODUCT IS SOLD AND PROVIDED ON AN "AS IS" BASIS. DANMARTELL.COM DOES NOT PROMISE OR GUARANTEE ANY INCOME OR PARTICULAR RESULT FROM YOUR USE OF THE INFORMATION CONTAINED HEREIN. THOSE RESULTS ARE YOUR RESPONSIBILITY AS THE END USER OF THE PRODUCT. (SOME STATES DO NOT ALLOW LIMITED WARRANTIES, SO THIS MAY NOT APPLY TO YOU.) IN PARTICULAR, DANMARTELL.COM SHALL NOT BE LIABLE TO USER OR ANY OTHER PARTY FOR ANY DAMAGES, OR COSTS, OF ANY CHARACTER INCLUDING BUT NOT LIMITED TO DIRECT OR INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, OR OTHER COSTS OR DAMAGES, IN EXCESS OF THE PURCHASE PRICE OF THE PRODUCT OR SERVICES. THESE LIMITATIONS MAY BE AFFECTED BY THE LAWS OF PARTICULAR STATES AND JURISDICTIONS AND AS SUCH MAY BE APPLIED IN A DIFFERENT MANNER TO A PARTICULAR USER.

# Termination

_____

We may cancel or terminate your right to use the Site or any part of the Site at any time without notice. In the event of cancellation or termination, you are no longer authorized to access the part of the Site affected by such cancellation or termination. The restrictions imposed on you with respect to material downloaded from the Site, and the disclaimers and limitations of liabilities set forth in these Terms of Service, shall survive.

# Refund Policy

_____

Your purchase of a product or service or ticket to an event may or may not provide for any refund. Each specific product, service, event or course will specify its own refund policy.

# Other

_____

The Digital Millennium Copyright Act of 1998 (the "DMCA") provides recourse for copyright owners who believe that material appearing on the Internet infringes their rights under the U.S. copyright law. If you believe in good faith that materials hosted by DANMARTELL.COM infringe your copyright, you, or your agent may send to DANMARTELL.COM a notice requesting that the material be removed or access to it be blocked. Any notification by a copyright owner or a person authorized to act on its behalf that fails to comply with requirements of the DMCA shall not be considered sufficient notice and shall not be deemed to confer upon DANMARTELL.COM actual knowledge of facts or circumstances from which infringing material or acts are evident. If you believe in good faith that a notice of copyright infringement has been wrongly filed against you, the DMCA permits you to send to DANMARTELL.COM a counter-notice. All notices and counter notices must meet the then current statutory requirements imposed by the DMCA; see http://www.loc.gov/copyright for details. DANMARTELL.COM's Copyright Agent for notice of claims of copyright infringement or counter notices can be reached as follows: care@danmartell.com

This Agreement shall be binding upon and inure to the benefit of DANMARTELL.COM and our respective assigns, successors, heirs, and legal representatives. Neither this Agreement nor any rights hereunder may be assigned without the prior written consent of DANMARTELL.COM. Notwithstanding the foregoing, all rights and obligations under this Agreement may be freely assigned by DANMARTELL.COM to any affiliated entity or any of its wholly owned subsidiaries.

# Dispute Resolution

_____

These Terms of Use shall be governed by and construed in accordance with the laws of the Province of New Brunswick, Canada and any dispute shall be subject to binding arbitration in New Brunswick, Canada. If any provision of this agreement shall be unlawful, void or for any reason unenforceable, then

that provision shall be deemed severable from this agreement and shall not affect the validity and enforceability of any remaining provisions.

# Class Action Waiver

—————————————————————

You may only resolve disputes with us on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed.

The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless all relevant parties specifically agree to do so following initiation of the arbitration.

# Severability

—————————————————————

If any clause within this Provision (other than the Class Action Waiver clause above) is found to be illegal or unenforceable, that clause will be severed from this Provision, and the remainder of this Provision will be given full force and effect. If the Class Action Waiver clause is found to be illegal or unenforceable, this entire Provision will be unenforceable and the dispute will be decided by a court.

Contact Emails

- General inquiries: care@danmartell.com
- GDPR inquiries: lauren@danmartell.com
- California CPRA inquiries: Danielle@danmartell.com

**ARCourts**                                                                 ⓘ

# 60CV-26-3226: GABRIEL STIRITZ ET AL V MARTELL GROWTH SOL ET AL

## Case Summary

Case Number
60CV-26-3226

Filing Date
03/10/2026

Court
PULASKI CIRCUIT

Case Type
CIVIL - OTHER

Status
CASE OPEN

## Case Participants

| Name | Type | Alias |
|---|---|---|
| HON. SHAWN JOHNSON - 14TH DIVISION 6TH CIRCUIT | JUDGE | JOHNSON |
| STIRITZ, GABRIEL | PLAINTIFF | None |
| SANFORD, JOSH | PLAINTIFF | None |
| | | SANFORD, |

**EXHIBIT B**

| | | |
|---|---|---|
| SANFORD, JOSHUA | PLAINTIFF/PETITIONER ATTORNEY | JOSH,SANFORD, JOSHUA |
| MARTELL GROWTH SOLUTIONS, INC. | DEFENDANT | None |
| MARTELL, DAN | DEFENDANT | None |

# Case Events

## No Events

# Offenses

## No Offenses

# Sentences

## No Sentences

# Milestone Tracks

## No Milestones

# Docket Entries

| Filing Date | Description | Docket Detail | Name | Documents |
|---|---|---|---|---|
| 03/10/2026 @ 11:40AM | AOC COVERSHEET CIVIL | None | SANFORD, JOSHUA | None |

| Date | Event | Details | Filer | |
|---|---|---|---|---|
| 03/10/2026 @ 11:40AM | COMPLAINT/PETITION FILED $ | None | SANFORD, JOSHUA | WEB |
| 03/10/2026 @ 11:40AM | MOF ORIGINAL | None | SANFORD, JOSHUA | None |
| 03/10/2026 @ 11:40AM | SUMMONS FEE 21-6-402 $ | None | SANFORD, JOSHUA | None |
| 03/10/2026 @ 11:40AM | SUMMONS FEE 21-6-402 $ | None | SANFORD, JOSHUA | None |
| 03/10/2026 @ 1:00PM | PAYMENT RECEIVED | A Payment of $170.00 was made on receipt 60CI578933. | None | None |
| 03/10/2026 @ 4:05PM | SUMMONS - FILER PREPARED | None | None | WEB |
| 03/10/2026 @ 4:05PM | SUMMONS - FILER PREPARED | None | None | WEB |

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2026-Mar-10 11:40:21
60CV-26-3226
C06D14 : 10 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

**GABRIEL STIRITZ**                                                    **PLAINTIFFS**
**and JOSH SANFORD**

vs.                          Case No. _____

**MARTELL GROWTH SOLUTIONS INC.,**                    **DEFENDANTS**
**and DAN MARTELL**

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs Gabriel Stiritz and Josh Sanford ("Plaintiffs") sue Martell Growth Solutions, Inc., and Dan Martell "Defendants" to obtain damages, restitution, and injunctive relief as defined below, from Defendants. For their Original Complaint and Jury Demand, Plaintiffs make the following allegations upon information and belief, except as to their own actions, investigations of their counsel, and the facts that are a matter of public record.

### I.    NATURE OF THE ACTION

1.    This action arises from Defendant Martell Growth Solutions Inc.'s fraudulent inducement of Plaintiffs Gabriel Stiritz and Josh Sanford to purchase a subscription to its "Elite Business Coaching" program, followed by Defendant's systematic failure to provide the promised services and refusal to honor timely cancellation demands—all while continuing to charge Plaintiffs' payment methods without authorization.

2.    Defendant's principal Dan Martell personally solicited Plaintiffs through a series of text messages in which he made specific, affirmative representations regarding the quality, value and deliverables of the coaching program, including: that Plaintiffs would receive personal onboarding from Dan Martell himself; that "wins come quickly on the inside"; that enrollment would be "easily one of the best investments" Plaintiffs would ever make; and that onboarding would occur on January 7, 2026. Each of these representations was false. None were performed.

3.    After enrolling and paying, Plaintiffs were unable to access the program. Plaintiffs could not join calls, received no onboarding, and were told their registration was "pending approval" well after the promised onboarding date. When Plaintiffs complained and demanded refunds and cancellation, Defendant refused—and continued billing.

4.    While Plaintiffs were locked out and had already demanded cancellation and refunds, Defendant sent additional solicitations pressuring Plaintiffs to upgrade to a $9,000 annual plan.

5.    Plaintiffs bring this action for fraudulent inducement, violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 et seq., unjust enrichment, and money had and received. Plaintiffs seek actual damages, punitive damages, restitution of all amounts paid, attorney's fees, and all other relief available under Arkansas law.

## II.    PARTIES

6.    Plaintiff Gabriel Stiritz is an individual residing in Little Rock, Arkansas, and is a citizen of the State of Arkansas. Mr. Stiritz is the co-founder and CEO of Lexamica, a legal software and referral platform based in Arkansas.

7.    Plaintiff Josh Sanford is an individual residing in Little Rock, Arkansas, and is a citizen of the State of Arkansas. Mr. Sanford is a founding partner of multiple law firms, including EKSM Law, Sanford Law Firm and Eagle Team.

8.    Defendant Martell Growth Solutions Inc. ("Martell Growth Solutions" or "Defendant"), is a corporation organized under the laws of British Columbia, Canada, with its principal place of business in Kelowna, British Columbia. At all relevant times, Defendant conducted and continues to conduct substantial business in the State of Arkansas and throughout the United States under the trade name "Dan Martell," soliciting Arkansas residents through text

messaging campaigns and internet marketing, and collecting payment through Stripe payment processing infrastructure.

## III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the claims asserted herein pursuant to Ark. Code Ann. § 16-13-201.

10.    This Court has personal jurisdiction over Defendant pursuant to Arkansas's long-arm statute, Ark. Code Ann. § 16-4-101. Defendant purposefully directed its commercial activities at Arkansas residents, including by personally soliciting Plaintiffs—both Arkansas residents—through direct text message communications, accepting payment from Arkansas residents, and causing tortious injury in this State.

11.    Venue is proper in Pulaski County pursuant to Ark. Code Ann. § 16-60-101 because a substantial part of the events giving rise to the claims occurred in this County.

## IV.    FACTUAL ALLEGATIONS

### A. Defendant's Solicitation of Plaintiffs

12.    On or about December 8, 2025, Plaintiff Sanford received a text message from a number associated with Defendant and Dan Martell, stating: "Yo! Dan Martell here. Pumped you're in my text community." The message offered a free "EA playbook" and invited Sanford to engage.

13.    Over the following days, Dan Martell engaged Plaintiff Sanford in a series of text message exchanges in which he asked about Sanford's businesses, revenues, team size, and goals—ostensibly to assess whether he could help Sanford grow.

14.     During these exchanges, Plaintiff Sanford disclosed that he operated multiple law firms and a software company, had assembled a litigation docket valued in excess of one billion dollars, and was seeking capital and coaching to scale his operations.

15.     On December 16, 2025, Dan Martell represented to Plaintiff Sanford: "Wins come quickly on the inside," in direct response to Sanford's consideration of the coaching program. This was an affirmative, specific representation of results.

16.     On December 17, 2025, after Plaintiff Sanford communicated that both he and Gabriel Stiritz intended to enroll in the two-month introductory plan, Dan Martell represented: "Excited to work together," and further promised: "Let me know once you're in and I'll kickoff onboarding" and "Will be a gamechanger." These were personal, specific promises of onboarding and value.

17.     On December 22, 2025, Defendant confirmed via text to Plaintiff Sanford that Plaintiff Stiritz's enrollment was received and stated: "Easily one of the best investments you'll ever make." Defendant also promised: "I'll set onboarding January 7th and you'll have access on the house until then." This was a specific, date-certain promise of personal onboarding.

18.     On December 23, 2025, after Plaintiff Stiritz had enrolled, Dan Martell confirmed: "John Gabriel Stiritz is your guy right? Saw you're in, congrats." Defendant then directed Plaintiffs to access specific program modules, promising to "dig in next call."

19.     At all times during Defendant's solicitation of Plaintiff Sanford, Plaintiff Sanford was acting on his own behalf and on behalf of Gabriel Stiritz, having expressly communicated to Defendant that he was seeking to enroll both himself and Stiritz simultaneously, that he was in the process of convincing Stiritz to join, and that both would enroll together. Defendant was therefore

aware that each representation made to Sanford was material to and intended to induce the enrollment of both Plaintiffs.

**B. The Program Was Not Delivered**

20.    Following enrollment and payment, Plaintiff Sanford was not admitted to the program. He received no clickable access link, could not join any calls, and was not onboarded. On December 31, 2025, Defendant acknowledged Sanford had not been able to join a call and told him to email support.

21.    On January 6, 2026, Plaintiff Sanford communicated: "The CX has been really bad for me so far. Might be my fault, but no one appears to be trying to help me." Defendant acknowledged the problem.

22.    On January 7, 2026—the date Defendant had specifically promised onboarding would occur—Plaintiff Sanford sent a screenshot showing his registration was still listed as "pending approval." No onboarding occurred.

23.    Similarly, Plaintiff Stiritz received access to program content, no onboarding, and no coaching services of any kind during the subscription period.  His access to program content was a Zoom a call during which Dan Martell pitched an energy supplement beverage and provided no substantive value.

**C. Demand for Refund and Continued Unauthorized Billing**

24.    Plaintiffs demanded cancellation and refund of all amounts paid. Defendant refused.

25.    Despite Plaintiffs' cancellation demands, Defendant continued to charge Plaintiff Stiritz's payment method. On February 23, 2026, Defendant charged Plaintiff Stiritz an additional $3,000.00, purportedly for "Elite Business Coaching – 2 Months" covering February 23 through

April 23, 2026—a period for which Plaintiff Stiritz had already demanded cancellation and received no services.

26.    On January 22, 2026, while Plaintiffs were locked out of the program and had already demanded refunds, Defendant sent Plaintiff Sanford a text message stating: "Hey Josh, Today is the last day to upgrade to $9k/yr. That's a $9k yearly save! Don't miss out." This solicitation was made after Plaintiff Sanford had communicated a garbage experience and requested a refund.

27.    In total, Plaintiffs paid no less than $6,000.00 to Defendant and received no coaching services, no access to program content, and no onboarding.

## V.    CAUSES OF ACTION

### COUNT I
### FRAUDULENT INDUCEMENT
(Both Plaintiffs Against Defendant)

28.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

29.    In connection with Plaintiffs' enrollment in the "Elite Business Coaching" program, Defendant, through its principal Dan Martell, made the following false representations of material fact to both Plaintiffs by making them via text to Josh Sanford, who was shopping for coaching on behalf of himself and Gabriel Stiritz:

(a)    That "wins come quickly on the inside" — a representation of the quality and efficacy of the program;

(b)    That Dan Martell personally would "kickoff onboarding" upon enrollment;

(c)    That enrollment would be "easily one of the best investments" Plaintiffs would ever make;

(d)    That onboarding would occur on January 7, 2026; and

(e)    That the program would be a "gamechanger" for Plaintiffs' businesses.

30.    Each of the foregoing representations was false. Defendant failed to provide any onboarding, failed to provide program access, and failed to provide any coaching services of any kind.

31.    Defendant knew these representations were false when made, or made them with reckless disregard for their truth or falsity. Defendant's pattern of making specific, personal promises to induce enrollment while systematically failing to deliver any services demonstrates that these representations were made without intent to perform.

32.    Defendant made these representations with the intent to induce Plaintiffs to enroll in and pay for the coaching program.

33.    Plaintiffs justifiably relied on Defendant's representations in deciding to enroll and pay. The representations were made personally by Dan Martell via direct text message, and were specific and unambiguous.

34.    As a direct and proximate result of Defendant's fraudulent inducement, Plaintiffs suffered damages in an amount to be proven at trial, including but not limited to the amounts paid to Defendant.

35.    Defendant's conduct was willful, wanton, and malicious, entitling Plaintiffs to punitive damages pursuant to Ark. Code Ann. § 16-55-206.

## COUNT II
## VIOLATION OF THE ARK. DECEPTIVE TRADE PRACTICES ACT
Ark. Code Ann. § 4-88-101 et seq. -- (Both Plaintiffs Against Defendant)

36.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

37.    The ADTPA prohibits unfair or deceptive acts or practices in business, commerce, or trade. Ark. Code Ann. § 4-88-107.

38.    Defendant engaged in unfair and deceptive acts and practices in violation of the ADTPA, including:

(a)    Making false representations about the characteristics, quality, and benefits of the coaching program, in violation of Ark. Code Ann. § 4-88-107(a)(1);

(b)    Continuing to charge Plaintiffs' payment methods after Plaintiffs demanded cancellation and cessation of billing, without any contractual or legal authority to do so;

(c)    Failing to honor cancellation demands, in violation of the FTC's Negative Option Rule, 16 C.F.R. Part 425 (effective January 2025), which prohibits merchants from continuing to charge consumers after cancellation is requested and constitutes an unfair act or practice under applicable law; and

(d)    Soliciting an upgrade purchase from Plaintiff Sanford after he had complained of a failed experience and demanded a refund, without disclosing that his cancellation demand had not been honored.

39.    Plaintiffs suffered actual damages as a result of Defendant's violations of the ADTPA.

40.    Pursuant to Ark. Code Ann. § 4-88-113(f), Plaintiffs are entitled to recover their actual damages and reasonable attorney's fees.

## COUNT III
## UNJUST ENRICHMENT
(Both Plaintiffs Against Defendant)

41.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

42.    Plaintiffs conferred a benefit upon Defendant by paying subscription fees for coaching services that Defendant failed to provide.

43.    Defendant had knowledge of and appreciated the benefit conferred.

44. Defendant's retention of amounts paid by Plaintiffs, without providing the promised services and after cancellation was demanded, is inequitable and unjust.

45. Plaintiffs are entitled to restitution of all amounts paid to Defendant.

### COUNT IV
### MONEY HAD AND RECEIVED
(Both Plaintiffs Against Defendant)

46. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

47. Defendant received money from Plaintiffs that in equity and good conscience belongs to Plaintiffs.

48. Defendant failed to provide any services in exchange for such money, and refused to return it after demand.

49. Plaintiffs are entitled to recover all amounts paid to Defendant.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gabriel Stiritz and Josh Sanford respectfully request that this Court enter judgment against Defendant Martell Growth Solutions Inc. as follows:

A. Actual damages in an amount to be proven at trial;

B. Punitive damages pursuant to Ark. Code Ann. § 16-55-206;

C. Restitution of all amounts paid by Plaintiffs to Defendant;

D. Reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-113(f);

E. Pre- and post-judgment interest as permitted by law;

F. Injunctive relief prohibiting Defendant from further charging Plaintiffs' payment methods; and

G. Such other and further relief as the Court deems just and proper.

## VII.   JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

DATED: March 10, 2026                              Respectfully submitted,

                                                  /s/ Josh Sanford
                                                  Josh Sanford
                                                  Ark. Bar No. 2001037
                                                  josh@sanfordlawfirm.com
                                                  **SANFORD LAW FIRM, PLLC**
                                                  Kirkpatrick Plaza
                                                  10800 Financial Centre Pkwy, Suite 510
                                                  Little Rock, Arkansas 72211
                                                  Phone: (888) 350-3931
                                                  Facsimile: (888) 276-3455

                                                  **COUNSEL FOR PLAINTIFFS**

THE CIRCUIT COURT OF __PULASKI__ COUNTY, ARKANSAS

__CIVIL__ DIVISION [Civil, Probate, etc.]

GABRIEL STIRITZ and JOSH SANFORD
Plaintiff

v.                                    No. _____

MARTELL GROWTH SOLUTIONS and DAN MARTELL
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

Martell Growth Solutions Inc     [Defendant's name and address.]

460 Doyle Ave
Kelowna, BC V1Y 0C2

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose

name and address are:

Josh Sanford, Sanford Law Firm, 10800 Financial Centre Pkwy, Suite 510, Little Rock, AR 72211

josh@sanfordlawfirm.com; (501) 221-0088

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:** _____

_____

_____

CLERK OF COURT

Address of Clerk's Office

_____

_____                [Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. _____ **This summons is for** _____ (*name of Defendant*).

**PROOF OF SERVICE**

☐ On _____ [date] I personally delivered the summons and complaint to

the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on

_____ [date] I left the summons and complaint in the close proximity of

the defendant by _____ [describe how the

summons and complaint was left] after he/she refused to receive it when I offered it to

him/her; or

☐ On _____ [date] I left the summons and complaint with

_____, a member of the defendant's family at least 18 years of age, at

_____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____

[name of individual], an agent authorized by appointment or by law to receive service of

summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address],

where the defendant maintains an office or other fixed location for the conduct of

business, during normal working hours I left the summons and complaint with

_____[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

_____

_____

_____

_____

_____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF _____ COUNTY, ARKANSAS


By: _____
      [signature of server]


_____
      [printed name, title, and badge number]

      **To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____


By: _____
[signature of server]


_____
[printed name]


Address: _____

         _____

    Phone: _____


Subscribed and sworn to before me this date: _____

    Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**    GABRIEL STIRITZ ET AL V MARTELL GROWTH SOL ET AL

**Case Number:**    60CV-26-3226

**Type:**    SUMMONS - FILER PREPARED

So Ordered

*JdValenzuela*

Jane Valenzuela

Electronically signed by JDVALENZUELA on 2026-03-10    page 7 of 7

THE CIRCUIT COURT OF __PULASKI__ COUNTY, ARKANSAS

__CIVIL__ DIVISION [Civil, Probate, etc.]

__GABRIEL STIRITZ and JOSH SANFORD__
Plaintiff

v.                                No. _____

__MARTELL GROWTH SOLUTIONS and DAN MARTELL__

Defendant

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

Dan Martell
_____   [Defendant's name and address.]

460 Doyle Ave
Kelowna, BC V1Y 0C2
_____

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose

name and address are:

Josh Sanford, Sanford Law Firm, 10800 Financial Centre Pkwy, Suite 510, Little Rock, AR 72211

josh@sanfordlawfirm.com; (501) 221-0088

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:** _____

_____

_____

CLERK OF COURT

Address of Clerk's Office

_____

_____

[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. _____ **This summons is for** _____ (*name of Defendant*).

**PROOF OF SERVICE**

☐ On _____ [date] I personally delivered the summons and complaint to

the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on

_____ [date] I left the summons and complaint in the close proximity of

the defendant by _____ [describe how the

summons and complaint was left] after he/she refused to receive it when I offered it to

him/her; or

☐ On _____ [date] I left the summons and complaint with

_____, a member of the defendant's family at least 18 years of age, at

_____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____

[name of individual], an agent authorized by appointment or by law to receive service of

summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address],

where the defendant maintains an office or other fixed location for the conduct of

business, during normal working hours I left the summons and complaint with

_____[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

_____

_____

_____

_____

_____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
      [signature of server]

_____
      [printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____

[printed name]

Address: _____

      _____

      Phone: _____

Subscribed and sworn to before me this date: _____

      Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**    GABRIEL STIRITZ ET AL V MARTELL GROWTH SOL ET AL

**Case Number:**    60CV-26-3226

**Type:**    SUMMONS - FILER PREPARED

So Ordered

Jane Valenzuela

Electronically signed by JDVALENZUELA on 2026-03-10    page 7 of 7